Eve H. Cervantez (State Bar No. 164709)
Jacqlyn Blatteis (State Bar No. 353335)
**ALTSHULER BERZON LLP**
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
ecervantez@altber.com
jblatteis@altber.com

George A. Hanson*
J. Austin Moore*
Alexander T. Ricke*
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: 816-714-7100
hanson@stuevesiegel.com
moore@stuevesiegel.com
ricke@stuevesiegel.com

*Counsel for Plaintiffs and the Proposed Class and Collective*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| WILLOW BRACCINI, and ONNAEDO NWANKWO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MEDICAL SOLUTIONS, LLC,<br><br>Defendant. | Case No.<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT FOR**:<br><br>1. Failure to Pay Wages and Minimum Wages for Mandatory Onboarding and Training Work (Cal. Lab. Code §§ 1194, 1197, 1182.12)<br>2. Failure to Reimburse Business Expenses (Cal. Lab. Code § 2802)<br>3. Failure to Pay Daily Overtime Wages (Cal. Lab. Code §§ 510, 511, 1194)<br>4. Failure to Properly Calculate Overtime and Meal and Rest Period Premiums Using the Regular Rate of Compensation (Cal. Lab. Code §§ 510, 226.7, 1194) |

5. Failure to Provide Accurate Itemized Wage Statements (Cal. Lab. Code § 226)
6. Failure to Timely Pay Wages During Employment (Cal. Lab. Code § 204)
7. Failure to Timely Pay Wages Upon Separation (Cal. Lab. Code §§ 201–203)
8. Violation of California's Unfair Competition Law (Bus. & Prof. Code §§ 17200 *et seq.*)
9. Failure to Pay Overtime Wages Under the Fair Labor Standards Act (29 U.S.C. § 207)

**JURY TRIAL DEMANDED**

Plaintiffs Willow Braccini and Onnaedo Nwankwo, on behalf of themselves and all similarly situated individuals, bring this class action on behalf of travel clinicians who performed work in California and this collective action on behalf of similarly situated employees under the Fair Labor Standards Act ("FLSA"). Plaintiffs make the following allegations based upon personal knowledge as to their own actions and upon information and belief as to all other matters.

## NATURE OF THE ACTION

1. Medical Solutions, one of the nation's largest healthcare staffing companies, has built its business model on the labor of travel clinicians who accept short-term assignments—often far from home—requiring them to uproot their lives, incur substantial out-of-pocket expenses, and work long, demanding shifts away from their friends and families. These healthcare professionals have become an indispensable part of the healthcare system, particularly during times of crisis such as the COVID-19 pandemic.

2. Rather than compensate these workers in compliance with the law, Medical Solutions adopted practices that result in systematic underpayment of wages owed. The practices include: (1) failing to pay for mandatory post-hire, pre-assignment

onboarding and training, even though this work is required by Medical Solutions and is directly related to the clinicians' work; (2) requiring employees to bear the cost of essential business expenses—including travel to and from assignments, licensing, credentialing, testing, and required uniforms—in violation of California Labor Code § 2802; (3) failing to pay required California daily overtime in violation of California Labor Code § 510, including by paying straight-time wages instead of daily overtime premiums for hours worked between eight and 12 in a workday; (4) systematically miscalculating the "regular rate of pay" by excluding housing stipends, meals-and-incidentals stipends, per diem payments, bonus payments, call-back pay, and other forms of compensation, resulting in the underpayment of overtime wages and meal and rest period premiums; (5) failing to timely pay wages owed both during employment and upon separation; and (6) failing to furnish accurate wage statements.

3. These violations are not isolated incidents, but rather systemic features of Medical Solutions' business operations. Plaintiffs and similarly situated workers are owed compensation for all hours worked, reimbursement for necessary expenses, and full payment of all premiums and overtime wages based on the correct regular rate. Through this action, Plaintiffs seek to hold Medical Solutions accountable for these widespread violations and recover the wages owed to these essential workers.

## PARTIES

4. Plaintiff Willow Braccini is a citizen of Mississippi who accepted travel assignments with Medical Solutions to relocate and perform work in California, including multiple assignments at Dominican Hospital in Santa Cruz, California.

5. Plaintiff Nwankwo is a citizen of Texas who accepted travel assignments with Medical Solutions to relocate and perform work in California, including an assignment at Mercy San Juan Medical Center in Carmichael, California. Her written consent to join this action under the FLSA is attached as Exhibit 1.

6. Defendant Medical Solutions, LLC is a Delaware limited liability company with its principal place of business located at 1010 N. 102nd Street, Suite

300, Omaha, Nebraska 68114.

7. Medical Solutions may be served through its registered agent for service of process in California: CSC – Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Sacramento, California 95833.

## JURISDICTION

8. This Court has subject matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because this is a proposed class action in which: (1) the proposed class consists of at least 100 members; (2) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (3) at least one member of the proposed class is a citizen of a state different from Defendant Medical Solutions.

9. This Court has federal question jurisdiction over Plaintiffs' claims under the FLSA, 29 U.S.C. § 201 *et seq*., pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiffs' FLSA claims.

10. This Court has personal jurisdiction over Medical Solutions because it is authorized to do business and maintains an office in California, regularly recruits, hires, and employs travel clinicians to facilities throughout California, and the unlawful wage practices alleged herein occurred in and arose out of Medical Solutions' contacts with California.

## VENUE AND DIVISIONAL ASSIGNMENT

11. Venue is proper in this District under 28 U.S.C. § 1391(b) because Plaintiff Braccini has worked for Medical Solutions on multiple travel assignments at Dominican Hospital in Santa Cruz, California, within this District, including an initial contract beginning in February 2025 and multiple subsequent extensions continuing through the present. Plaintiff Braccini is currently residing in this District in connection with her present assignment. Medical Solutions' challenged compensation and

reimbursement practices were applied to Plaintiff Braccini during the course of her work in this District, including unpaid mandatory onboarding and training time, incomplete reimbursement of assignment-related business expenses, underpayment of daily overtime wages, and the exclusion of non-discretionary compensation—such as stipends, per diem payments, loyalty bonuses, and call-back pay—from the regular rate of pay used to calculate overtime wages and meal and rest period premium compensation. Plaintiff Braccini received wage payments and wage statements reflecting these practices while working in this District, and her claims arose throughout her assignments at Dominican Hospital within this District. Accordingly, a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District.

12. Assignment to the San Jose Division is proper under Civil L.R. 3-2(c) and 3-2(e) because Plaintiff Braccini worked in Santa Cruz County, and a substantial part of the events or omissions giving rise to the claim occurred within this county.

## STATEMENT OF FACTS

### A. Medical Solutions fails to pay for mandatory post-hire, pre-assignment onboarding and training time.

13. Under California law, employers must compensate employees for all hours worked, including time spent on training, onboarding, and related activities that are required by the employer, controlled by the employer, or directly related to the employee's job duties.

14. After accepting assignments with Medical Solutions, Plaintiffs and other travel clinicians became employees of Medical Solutions and were required to complete mandatory onboarding and training before beginning their assignments.

15. Medical Solutions required Plaintiffs and Class members to complete extensive pre-assignment onboarding and training, including, but not limited to, orientation curricula, online training modules, required examinations and assessments, mandatory certifications, physical examinations, skills checklists, and other

onboarding requirements. Completion of this training was a prerequisite to beginning work on an assignment and was not optional.

16. Medical Solutions controlled this training by setting deadlines for completion, conditioning the start of paid work on completion of the training, and prohibiting clinicians from beginning their assignments unless and until all onboarding requirements were satisfied.

17. Despite the mandatory nature of this onboarding and training and its direct relationship to Plaintiffs' job duties, Medical Solutions failed to pay Plaintiffs and Class members for all time spent completing these required activities. Because Medical Solutions required Plaintiffs and Class members to complete onboarding and training as a prerequisite to beginning paid assignments, imposed deadlines for completion, and prohibited clinicians from starting work unless and until all onboarding requirements were satisfied, Plaintiffs and Class members were subject to Medical Solutions' control during this time and were entitled to compensation for all such hours worked.

18. For example, Plaintiff Braccini signed her first assignment agreement on or about December 27, 2024. Before she was permitted to begin her assignment at Dominican Hospital on February 3, 2025, she was required to spend multiple hours completing mandatory training modules. In addition, Plaintiff Braccini was required to complete a physical examination and multiple core competency and skills assessments as part of Medical Solutions' onboarding process. Medical Solutions did not compensate Plaintiff Braccini for any of this required time.

19. Similarly, Plaintiff Nwankwo signed her assignment agreement on or about February 22, 2023. Before she was permitted to begin her assignment at Mercy San Juan Medical Center on March 7, 2023, she was required to spend multiple hours completing mandatory training modules. Plaintiff Nwankwo was also required to complete a physical examination and a required stroke assessment test as part of Medical Solutions' onboarding process. Medical Solutions did not compensate Plaintiff Nwankwo for any of this required time.

20. Under California law, required training is compensable work time when the employee is required to attend or is subject to the employer's control. The California Division of Labor Standards Enforcement ("DLSE") has explained that training time is not counted as hours worked only if all of the following criteria are satisfied: (1) attendance is outside regular working hours; (2) attendance is voluntary; (3) the training is not directly related to the employee's job; and (4) the employee performs no productive work during attendance. *See* DLSE Enforcement Policies & Interpretations Manual § 46.6.3.

21. Those criteria were not satisfied here because Plaintiffs' attendance was mandatory, the training was directly related to their job duties, and completion was required as a condition of beginning work on their assignments.

22. Medical Solutions also failed to maintain accurate records of the time Plaintiffs and Class members spent completing mandatory onboarding and training and did not provide a reliable or lawful mechanism for employees to record or claim this time, resulting in inaccurate wage statements and underpayment.

**B. Medical Solutions fails to reimburse business expenses**.

23. After accepting their assignments and beginning employment, travel clinicians were routinely required to incur substantial out-of-pocket necessary business expenses that Medical Solutions knew or should have known they were incurring as a direct and foreseeable consequence of performing their job duties. These expenses included, but were not limited to, transportation to the assignment location, lodging costs, mileage, meals, and other incidentals associated with their required temporary relocation and employment duties.

24. For example, Plaintiff Nwankwo incurred necessary business expenses traveling from Texas to her California assignment at Mercy San Juan Medical Center in Sacramento County, California, including vehicle shipping costs, airfare, and meals. Medical Solutions reimbursed only $400 of those expenses, leaving thousands of dollars unreimbursed.

25. Pursuant to California Labor Code § 2802, "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties." Medical Solutions knew that Plaintiffs would incur these necessary expenses as part of their assignments, yet failed to reimburse them in full.

26. These expenses were incurred for the benefit of Medical Solutions and were necessary for Plaintiffs to accept and perform their assignments. Medical Solutions controlled the locations, timing, and requirements of the assignments and required Plaintiffs to bear these costs as a condition of employment.

27. Medical Solutions maintained a uniform policy and practice of failing to fully reimburse travel clinicians for reasonable, necessary, and reasonably foreseeable expenses incurred in connection with their assignments, including travel, lodging, meals, licensing, credentialing, and other mandatory costs.

28. Medical Solutions' partial reimbursement practices—including flat travel allowances that did not reflect actual costs incurred—were not designed to fully indemnify employees, and instead shifted a portion of Medical Solutions' operating costs onto its workforce.

29. Medical Solutions' failure to indemnify Plaintiffs and others similarly situated for necessary, mandatory, and foreseeable business expenses constitutes a violation of California Labor Code § 2802.

30. As a direct and proximate result of Medical Solutions' failure to reimburse these expenses, Plaintiffs and other travel clinicians have suffered financial harm in the form of uncompensated business expenditures they were legally entitled to recover.

**C. Medical Solutions did not compensate Plaintiffs for daily overtime as required by California law.**

31. California Labor Code § 510 requires that non-exempt employees be paid overtime compensation at one and one-half times the employee's regular rate of pay for all hours worked in excess of eight hours in a workday, and double-time for all

hours worked in excess of 12 hours in a workday, unless a lawful alternative workweek schedule has been adopted pursuant to Labor Code § 511.

32. Travel clinicians placed by Medical Solutions in California routinely worked long shifts, including schedules consisting of three or more 12-hour shifts per week, as well as shifts exceeding eight hours but less than 12 hours in a single workday.

33. Despite these work schedules, Medical Solutions maintained and applied a uniform policy and practice under which it failed to pay the required daily overtime premium for hours worked in excess of eight in a workday. Instead, Medical Solutions paid straight-time wages for hours worked between 8 and 12 in a workday, and paid overtime compensation only for hours worked in excess of 40 hours in a workweek.

34. For example, Plaintiff Nwankwo routinely worked 10-hour shifts four days per week while on assignment at Mercy San Juan Medical Center in California. Under California law, Medical Solutions was required to pay her overtime compensation at one and one-half times her regular rate of pay for hours worked in excess of eight in each workday. Instead, Medical Solutions paid Plaintiff Nwankwo straight-time wages for all hours worked up to 12 hours in a workday.

35. In the workweek of March 18, 2023, Plaintiff Nwankwo worked a total of 41 hours across four shifts of at least 10 hours each. Medical Solutions paid her only one hour at the overtime rate based on weekly hours exceeding 40 hours. However, because Plaintiff Nwankwo worked more than eight hours on four separate workdays, Medical Solutions was required to pay daily overtime for each hour worked in excess of eight on those workdays. As a result of Medical Solutions' unlawful policy and practice, Plaintiff Nwankwo was systematically underpaid for daily overtime during that workweek. This pattern repeated throughout her assignment.

36. In some instances, Medical Solutions attempted to justify its failure to pay daily overtime by asserting that overtime in California was not owed until after 12 hours in a workday due to an alleged "alternative workweek schedule" ("AWS").

37. California Labor Code § 511 permits an employer to adopt an alternative

workweek schedule only if strict procedural requirements are met, including a bona fide election in the affected work unit, advance disclosure of the effects of the proposed schedule, and approval by at least two-thirds of the affected employees.

38. Medical Solutions did not conduct a lawful alternative workweek election in any affected work unit of its California workforce, did not provide the disclosures required by Labor Code § 511, and did not obtain the required two-thirds approval.

39. Accordingly, Medical Solutions did not lawfully adopt an alternative workweek schedule applicable to Plaintiffs or other members of the Class, and any attempt to justify its failure to pay daily overtime based on an alleged alternative workweek schedule is unlawful.

40. To the extent Medical Solutions attempted to rely on alternative workweek schedules adopted by the healthcare facilities where Plaintiffs were placed, such reliance is improper and legally ineffective because alternative workweek schedules are employer-specific and cannot be imposed on employees of a separate employer, such as a staffing agency. Plaintiffs were employees of Medical Solutions. In fact, the facilities specifically disclaim an employment relationship with Plaintiffs such that any facility-specific AWS elections—if they existed at all—did not apply to Medical Solutions' traveling clinicians, their job classifications, their work units, or their assignments.

41. Accordingly, Medical Solutions was required to pay daily overtime under Labor Code § 510 for all hours worked in excess of eight in a workday, and its failure to do so violated California law.

**D. Medical Solutions underpaid overtime and premium wages by excluding entire categories of wages from the regular rate of pay**.

42. Under both California and federal law, an employee's "regular rate of pay" must include all remuneration for the employee's work when calculating overtime wages and any meal or rest period premium payments owed under California law. As alleged herein, Medical Solutions excludes multiple forms of compensation from the

regular rate of pay of its travel clinicians, including: (a) stipend and per diem payments nominally for expense reimbursement that function as wages; (b) non-discretionary "loyalty" or similar bonuses; and (c) call-back pay.

**1. Stipends and Per Diem Compensation**

43. Medical Solutions compensates its non-exempt travel clinicians pursuant to standardized Travel Assignment Agreements that promise a defined "weekly pay" or "total compensation" package in exchange for the clinician's agreement to accept and perform work on a specific assignment.

44. These compensation packages are structured to include: (a) a comparatively low base hourly wage; and (b) additional, guaranteed payments labeled as housing stipends and meals-and-incidentals stipends. Medical Solutions sets the base hourly wage at a comparatively low level such that the overall compensation offered for an assignment approximates prevailing market rates only when the stipend and per diem payments are included. The Travel Assignment Agreements also purport to specify a fixed "overtime rate." However, under California and federal law, an employee's overtime rate is derived from the regular rate of pay, which must be calculated on a workweek-by-workweek basis to include all non-discretionary compensation. By treating the overtime rate as a static figure tied solely to the base hourly wage, Medical Solutions incorrectly assumes that the base hourly wage alone constitutes the regular rate of pay and fails to include other required components of compensation in the regular rate.

45. Medical Solutions' stipend and per diem payments, as structured and administered, operate as compensation for labor rather than bona fide expense reimbursements. Medical Solutions' Travel Assignment Agreements expressly permit the Company to reduce or withhold these payments when a clinician misses a scheduled shift or is unavailable to work. Yet, Medical Solutions simultaneously calculates and pays stipends on a daily basis on the premise that clinicians remain away from home and incur living expenses every day throughout the duration of an

assignment, regardless of whether work is performed on a particular day. By conditioning the payment and retention of stipends on work availability and shift completion, Medical Solutions confirms that these payments are tethered to work performed—not to expenses incurred.

46. In addition, Medical Solutions' stipend and per diem payments are not tied to actual expenses incurred. Clinicians are not required to submit receipts, document expenditures, or reconcile stipend payments against substantiated costs. Instead, Medical Solutions pays predetermined amounts set unilaterally by the Company, regardless of whether a clinician incurs corresponding expenses. Medical Solutions further advertises these stipend amounts in advance of assignments without regard to the actual expenses any individual clinician will incur.

47. Medical Solutions also markets and advertises assignments using a single "weekly pay" or "total compensation" figure that aggregates hourly wages together with stipends and per diem payments. By presenting these amounts as part of the clinician's overall pay package—rather than as reimbursement tied to verified expenses—Medical Solutions reinforces that stipends and per diems function as compensation for work performed, not bona fide expense reimbursements.

48. Medical Solutions' own written "Business Purpose Reimbursement & Per Diem Recovery Policy" confirms that stipend and per diem payments are conditioned on work availability and performance rather than on expenses incurred. Under that policy, Medical Solutions pays "Daily Per Diems" for each day of an assignment but expressly reduces or recovers per diem payments when a clinician misses a full scheduled shift, is unavailable for work, or returns to the clinician's tax home. The amount of per diem retained by the clinician is prorated based on the number of shifts worked.

49. Conversely, Medical Solutions does not recover per diem payments when a hospital cancels a shift or ends a shift early so long as the clinician remains available for work, further demonstrating that per diem payments turn on work availability rather

than on whether expenses were incurred.

50. By conditioning the payment and retention of stipends and per diems on whether work is performed or available to be performed—and by reducing or clawing back those payments when work is not performed—Medical Solutions confirms that these payments function as compensation for labor. True expense reimbursements do not fluctuate based on hours worked, shifts completed, or employee availability.

51. Further demonstrating that the stipends function as wages, when Medical Solutions deducts stipends from a clinician's wages for missing a shift, it does so on a prorated basis that is tethered to the amount of work performed, not to the amount of time spent incurring assignment-related expenses away from home. For example, if a clinician is scheduled to work three 12-hour shifts in a week but misses one shift, Medical Solutions pays two-thirds of the stipends (corresponding to the two shifts worked out of three scheduled). This practice of deducting prorated stipends based on the number of shifts worked confirms that stipend payments are linked to the quantity of work performed, not the amount of time spent incurring assignment-related expenses away from home on the company's behalf.

### 2. Non-Discretionary Bonus Compensation

52. In addition to stipends and per diem payments, Medical Solutions pays its clinicians non-discretionary incentive compensation in the form of "loyalty" bonuses and similar bonus programs.

53. For example, Medical Solutions provided for a "loyalty bonus" program under which clinicians earn a fixed bonus amount—such as $600—for every specified number of hours worked (for example, every 600 hours), with no cap on the total bonus compensation a clinician may earn.

54. These loyalty bonuses are earned automatically based solely on the number of hours worked by the clinician. They are not discretionary, are not contingent on any subjective performance criteria, and are not awarded at the employer's discretion. Once the required number of hours is worked, payment of the bonus is

mandatory.

55. Loyalty bonuses therefore function as additional compensation for work performed over time and are remuneration for employment under both California law and the FLSA. Despite the non-discretionary nature of these loyalty bonuses, Medical Solutions failed to include such bonus payments in the regular rate of pay when calculating overtime wages and meal and rest period premium pay owed to Plaintiffs and Class members.

**3. Call-Back Pay**

56. Medical Solutions also pays clinicians a non-discretionary shift differential commonly referred to as "call-back pay" when clinicians are required to return to work, remain available, or perform work outside of their regularly scheduled shifts. The higher wage rate is set forth in the form Travel Assignment Agreements between Medical Solutions and the clinicians.

57. Call-back pay is paid at a higher hourly rate than the clinician's regular straight-time rate and is earned when a clinician is called back to work or required to remain available to perform work for Medical Solutions or its clients.

58. Call-back pay is non-discretionary and provided for by contract in the Travel Assignment Agreements. Clinicians earn call-back pay whenever the triggering conditions are met, and payment is not contingent on any subjective evaluation or managerial discretion.

59. Call-back pay constitutes remuneration for employment and functions as a shift differential under California and federal law. As such, it must be included in the regular rate of pay used to calculate overtime wages and meal and rest period premiums.

60. Medical Solutions nevertheless excluded call-back pay from the regular rate of pay by relying on a fixed overtime rate set forth in its Travel Assignment Agreements and by calculating overtime and premium compensation based solely on the base hourly wage.

61. Under California law, when calculating overtime wages under Labor Code § 510 and any meal or rest period premium payments owed under Labor Code § 226.7, employers must include all remuneration for an employee's work in the regular rate of pay. This includes all forms of compensation for work, including hourly wages (whether acknowledged or disguised as expense reimbursement), shift differentials, and performance-based bonuses.

62. Similarly, under the FLSA, the regular rate must include "all remuneration for employment paid to, or on behalf of, the employee," unless a narrow statutory exclusion applies. 29 U.S.C. § 207(e).

63. Medical Solutions nevertheless treated its stipend and per diem payments, bonus payments, and call-back pay as excludable from the regular rate of pay and calculated overtime and premium compensation using only the base hourly wage.

64. As a result, Medical Solutions artificially depressed the regular rate of pay used to calculate: (a) daily overtime owed under California Labor Code § 510 for hours worked in excess of eight in a day; (b) weekly overtime owed under both California law and the FLSA for hours worked in excess of 40 in a workweek; (c) double-time wages owed for hours worked in excess of 12 in a workday under California Labor Code § 510; and (d) any meal or rest period premium payments owed under Labor Code § 226.7.

65. For example, during the workweek of September 7 through September 13, 2025, Plaintiff Braccini worked 37.02 hours for Medical Solutions in California, including 12 hours of overtime and 1.02 hours of double-time under California law. Medical Solutions paid her $24.00 per hour for straight-time hours, $36.00 per hour for overtime hours, and $48.00 per hour for double-time hours.

66. During that same workweek, Medical Solutions also paid Plaintiff Braccini $973 for lodging and $602 for meals and incidentals. These stipend payments constituted compensation for work and were required to be included in Plaintiff Braccini's regular rate of pay. Had those payments been included in her regular rate,

her overtime and double-time rates would have significantly exceeded what was paid by Medical Solutions.

67. Similarly, during the workweek of May 18 through May 24, 2025, Plaintiff Braccini worked 35.9 hours for Medical Solutions in California, including 11.72 hours of overtime and 0.18 hours of double-time under California law. Medical Solutions paid her $23.00 per hour for straight-time hours, $34.50 per hour for overtime hours, and $46.00 per hour for double-time hours. She also received three meal-period premium payments during this workweek paid at $34.50 per hour, reflecting the same rate as her overtime payments.

68. During that same workweek, Medical Solutions also paid Plaintiff Braccini $941.61 for lodging and $582.58 for meals and incidentals as well as a $600 loyalty bonus. These stipend payments constituted compensation for work and were required to be included in Plaintiff Braccini's regular rate of pay. Likewise, the loyalty bonus was a non-discretionary bonus payment for continued work for the company that was required to be included in the regular rate. Had those payments been included in her regular rate, her overtime, double-time, and missed meal period premium rates would have significantly exceeded what was paid by Medical Solutions.

69. Plaintiff Nwankwo similarly experienced underpayment due to Medical Solutions' improper calculation of the regular rate of pay, in addition to not being paid all required daily overtime. During the workweek of March 12 through March 18, 2023, Plaintiff Nwankwo worked 41 hours for Medical Solutions in California, including approximately eight hours of overtime under California law and one hour of overtime under the FLSA.

70. Medical Solutions paid Plaintiff Nwankwo $92.75 per hour for straight-time hours and $139.15 per hour for overtime hours. During that same workweek, Medical Solutions also paid Plaintiff Nwankwo $982.26 for lodging and $467.42 for meals and incidentals. These stipend payments constituted compensation for work and were required to be included in Plaintiff Nwankwo's regular rate of pay. Had those

payments been included in her regular rate, her overtime and double-time rates would have significantly exceeded what was paid by Medical Solutions.

71. Medical Solutions' violations of the FLSA were willful. Medical Solutions knew or showed reckless disregard for whether its compensation practices complied with federal law, including by structuring compensation to shift wages into stipends and per diems and then excluding those payments for Plaintiffs' work from the regular rate.

72. Medical Solutions continued these practices despite employee complaints and despite well-publicized litigation in the staffing industry. In particular, Medical Solutions continued to exclude non-discretionary stipend and per diem compensation from the regular rate of pay, in direct contravention of the Ninth Circuit's holding in *Clarke v. AMN Services*, LLC, 987 F.3d 848 (9th Cir. 2021), which put Medical Solutions on clear notice that such payments must be included in the regular rate. Medical Solutions was aware, or reasonably should have been aware, of its obligations under *Clarke*, including because Medical Solutions is a member of the National Association of Travel Healthcare Organizations,[1] which submitted an amicus brief in connection with efforts to obtain Supreme Court review of *Clarke*.[2]

### E. Medical Solutions failed to timely pay wages during employment and upon separation.

73. Under California law, employers are required to pay employees all earned wages in a timely manner during the course of employment and upon separation. Labor Code § 204 mandates that employers pay wages for labor performed no later than designated regular paydays. Labor Code §§ 201 and 202 require that all final wages be

---

[1] National Ass'n of Travel Healthcare Orgs., Current NATHO Members, NATHO, https://natho.org/Current-NATHO-Members (last visited Jan. 28, 2026).

[2] Brief of National Ass'n of Travel Healthcare Orgs. as Amicus Curiae Supporting Petitioner, *AMN Servs., LLC v. Clarke*, No. 21-296 (U.S. filed Sept. 28, 2021), available at: https://www.supremecourt.gov/DocketPDF/21/21-296/193940/20210928143411490_21-296%20Amicus%20NATHO.pdf (last visited Jan. 28, 2026).

paid immediately upon involuntary termination or within 72 hours of voluntary resignation, respectively.

74. When an employer willfully fails to pay all wages owed at the time of separation, California Labor Code § 203 provides that the employee's wages shall continue as a penalty for up to thirty (30) days until paid in full.

75. Medical Solutions failed to comply with these requirements in multiple respects. First, Medical Solutions systematically underpaid employees during employment due to its failure to properly calculate the regular rate of pay, as alleged above. These underpayments affected employees' regular paychecks and were not paid in full when due on established paydays.

76. Because these wages were due and payable on regular paydays and were not paid in full when due, Medical Solutions violated the timeliness requirements of California Labor Code § 204.

77. In addition, when travel clinicians completed their assignments or were separated from employment, Medical Solutions frequently failed to include all earned wages in the employees' final paychecks, including unpaid straight-time training wages, unpaid or underpaid daily and weekly overtime wages, unpaid meal and rest period premiums, and other compensation owed. These failures resulted in delayed and incomplete final wage payments in violation of California Labor Code §§ 201 and 202.

78. These delays and omissions were not isolated errors, but rather the predictable and recurring result of Medical Solutions' standardized compensation and payroll practices and its failure to implement adequate safeguards to ensure compliance with California wage laws. Medical Solutions knew or reasonably should have known that its practices routinely resulted in late or incomplete payment of wages.

79. Accordingly, Medical Solutions' failures to timely pay all wages owed at separation were knowing and willful within the meaning of California Labor Code § 203.

80. As a result of Medical Solutions' unlawful practices, Plaintiffs and other aggrieved employees were deprived of wages owed during employment and following separation, and are entitled to recover waiting time penalties under California Labor Code § 203, as well as all other damages, restitution, penalties, interest, attorneys' fees, and costs authorized by law.

81. Medical Solutions failed to furnish Plaintiffs and Class members with accurate itemized wage statements as required by California Labor Code § 226. Because Medical Solutions excluded compensation such as stipends, per diem payments, bonus payments, and call-back pay from the regular rate used to calculate overtime and any meal or rest period premium payments, its wage statements misstated the applicable hourly rates and the wages and premium compensation earned. Medical Solutions' wage statements also failed to accurately reflect compensable onboarding and training time as hours worked, thereby omitting hours worked from the wage statements. These omissions rendered those wage statements inaccurate and misleading within the meaning of Labor Code § 226(a).

82. Medical Solutions' failure to provide compliant wage statements was knowing and intentional because it resulted from standardized payroll and compensation practices and Medical Solutions' knowledge of the compensation components it paid and reported. Medical Solutions also knowingly and intentionally failed to report compensable onboarding and training time because it required that training as a condition of beginning work, directed Plaintiffs and Class members to complete facility-specific modules and examinations, and facilitated the completion of those requirements in coordination with the healthcare facilities where assignments were performed.

83. Upon separation, Medical Solutions' final wage statements and final wage payments likewise failed to include all wages owed, and these omissions resulted from Medical Solutions' standardized payroll practices rather than isolated or good-faith clerical errors.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

84. Class Definitions: Plaintiffs bring this action individually and on behalf of other similarly situated individuals. Pursuant to Federal Rules of Civil Procedure 23(b)(3), 23(b)(2), and/or 23(c)(4), Plaintiffs seek certification of the following Classes under Rule 23 and a Collective under 29 U.S.C. § 216(b):

1. **California Unpaid Work Class**: All travel clinicians employed by Medical Solutions who, within the applicable statute of limitations, (1) performed work in California, (2) were required to perform mandatory post-hire onboarding, training, testing, or credentialing activities in connection with such work, and (3) were not compensated for that time.

2. **California Expense Reimbursement Class**: All travel clinicians employed by Medical Solutions who, within the applicable statute of limitations, (1) performed work in California, and (2) incurred unreimbursed or partially reimbursed necessary business expenses in connection with such work, including travel, lodging, licensing, or credentialing expenses.

3. **California Daily Overtime Class**: All travel clinicians employed by Medical Solutions who, within the applicable statute of limitations, (1) performed work in California, (2) worked more than eight hours in a workday in connection with such work, and (3) were not paid a daily overtime premium for those hours in excess of eight per day.

4. **California Regular Rate Class**: All travel clinicians employed by Medical Solutions who, within the applicable statute of limitations, (1) performed work in California, (2) were paid a base hourly wage and were also paid one or more of the following: housing stipends, meals-and-incidentals stipends, per diem payments, bonus payments, and/or call-back pay in connection with such work, (3) were paid overtime wages and/or meal or rest period premium payments during one or more workweeks, and (4) had some or all of those stipend, per diem, bonus, and/or call-back payments excluded from the regular rate of compensation used by Medical Solutions to calculate those payments, resulting in overtime compensation paid at a rate less than one-and-one-half (1.5) times the regular rate that would have applied had all such payments been included, and/or underpayment of any meal or rest period premium payments owed.

5. **California Wage Statement Class**: All travel clinicians employed by Medical Solutions who, within the applicable statute of limitations, (1) performed work in California, and (2) received one or more itemized wage statements from Medical Solutions in connection with such work that, based on Medical Solutions' payroll records and compensation practices, were inaccurate or misleading in one or more of the following respects: (a)

failing to report all compensable hours worked, including mandatory onboarding and training time; (b) misstating the applicable hourly rates, including overtime and/or double-time rates; (c) failing to accurately report wages earned at each applicable rate; and/or (d) failing to accurately report premium compensation due and/or paid, including any meal or rest period premium pay, because such amounts were calculated using an unlawfully depressed regular rate that excluded non-discretionary compensation, including stipends or per diem payments, loyalty or similar bonuses, and/or call-back pay.

6. **<u>California Failure to Timely Pay Wages Class</u>**: All travel clinicians employed by Medical Solutions who, within the applicable statute of limitations, (1) performed work in California, and (2) received one or more wage payments on a regularly scheduled payday in connection with such work that reflected one or more of the following payroll practices, as shown by Medical Solutions' payroll records and/or wage statements: (a) payment of straight-time wages, rather than a daily overtime premium, for hours worked in excess of eight hours in a workday and up to 12 hours; (b) calculation of overtime wages and/or any meal or rest period premium pay using a regular rate that excluded one or more forms of non-discretionary compensation paid in the same pay period, including stipends or per diem payments, loyalty or similar bonuses, and/or call-back pay; and/or (c) omission of compensable onboarding and training time from paid hours.

7. **<u>California Waiting Time Penalties Class</u>**: All travel clinicians employed by Medical Solutions who, within the applicable statute of limitations, (1) performed work in California, (2) separated from employment with Medical Solutions in connection with such work, and (3) did not receive all earned wages in their final paycheck at the time of separation, including one or more of the following: (a) wages for compensable onboarding and training time; (b) daily or weekly overtime premium wages; (c) meal or rest period premium wages; (d) overtime or premium wages calculated using a regular rate that excluded non-discretionary compensation, including stipends or per diem payments, loyalty or similar bonuses, and/or call-back pay; and/or (e) unreimbursed business expenses payable at separation.

8. **<u>California Injunctive Relief Class</u>**: All travel clinicians employed by Medical Solutions who perform work in California and who are subject to Medical Solutions' compensation, reimbursement, payroll, and wage-statement practices challenged in this Complaint.

9. **<u>FLSA Collective</u>**: All travel clinicians who, within the applicable statute of limitations, (1) performed work for Medical Solutions in California, (2) worked more than forty (40) hours in one or more workweeks in connection with such work, (3) were paid a base hourly wage and were also paid one or more of the following: housing stipends, meals-and-incidentals stipends, per diem payments, bonus payments, and/or call-back

pay, and (4) were paid overtime compensation at a rate that was less than one-and-one-half (1.5) times the regular rate that would have applied had all such payments been included.

85. Excluded from the Classes are the Court and its officers, employees, and relatives; Medical Solutions and its subsidiaries, officers, and directors; and governmental entities.

86. Numerosity: The members of the Classes are so numerous that joinder is impracticable. Medical Solutions operates nationwide and has employed thousands of traveling clinicians who were subject to the same challenged compensation practices.

87. All members of the Classes are ascertainable by reference to objective criteria, as Medical Solutions has access to addresses and other contact information for Class members that can be used for notice purposes.

88. Common Questions of Law and Fact Predominate: There are many questions of law and fact common to Plaintiffs and the Classes, and those questions substantially predominate over any questions that may affect individual members of the Class. Common questions include:

a. Whether Medical Solutions failed to pay employees for mandatory post-hire, pre-assignment onboarding and training;

b. Whether Medical Solutions maintained a uniform policy or practice of failing to reimburse necessary business expenses in violation of California Labor Code § 2802;

c. Whether stipends and per diem payments function as wages and must be included in the regular rate of pay when calculating overtime pay rates and meal and rest period premiums;

d. Whether non-discretionary bonus payments and call-back pay must be included in the regular rate of pay when calculating overtime pay rates and meal and rest period premiums;

e. Whether Medical Solutions failed to pay daily overtime wages for hours worked in excess of eight hours, in violation of California Labor Code §

510;

f. Whether Medical Solutions failed to timely pay wages due during employment and upon separation;

g. Whether Medical Solutions' compensation policies violated the FLSA;

h. Whether Plaintiffs and Class members were damaged by Medical Solutions' unlawful compensation practices, and whether such damages can be determined through common proof;

i. Whether Medical Solutions' conduct was knowing and willful within the meaning of California Labor Code § 203 and/or the FLSA.

89. Typicality: Plaintiffs' claims are typical of those of the proposed Classes because they arise from the same conduct, policies, and practices of Medical Solutions and are based on the same legal theories. Plaintiffs, like other members of the Classes, were subject to Medical Solutions' standard onboarding, expense reimbursement, payroll, and compensation policies.

90. Adequacy of Representation: Plaintiffs will fairly and adequately represent the interests of the Classes and Collective. Plaintiffs have no conflicts with other members of the proposed Classes and have retained counsel experienced in complex labor, employment, and class litigation who will vigorously prosecute this action on behalf of all Class members.

91. Superiority of Class Action: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class treatment will allow a large number of similarly situated individuals to pursue common claims in a single forum, avoiding the waste and inefficiency of individual actions and promoting judicial economy.

92. Rule 23(b)(2): Plaintiffs seek certification of the California Injunctive Relief Class under Rule 23(b)(2) because Medical Solutions has acted, and continues to act, on grounds generally applicable to the class by maintaining uniform compensation, reimbursement, payroll, and wage-statement practices that apply to

current travel clinicians working in California. Declaratory and injunctive relief is therefore appropriate for the class as a whole to prohibit the continuation of these unlawful practices and to require Medical Solutions to implement lawful compensation and payroll procedures going forward. Plaintiffs either currently work for Medical Solutions or may work for Medical Solutions in the future.

93. To the extent not all issues can be resolved on a class-wide basis, Plaintiffs seek certification of particular issues under Rule 23(c)(4), and reserve the right to propose additional subclasses under Rule 23(c)(5), including but not limited to subclasses for different wage claims, facilities, or geographic locations.

## COUNT I

## Failure to Pay Wages and Minimum Wages for Mandatory Onboarding and Training Work

**(Cal. Lab. Code §§ 1194, 1197, 1182.12)**

(*On behalf of Plaintiffs and the California Unpaid Work Class*)

94. Plaintiffs reallege and incorporate by reference all prior paragraphs.

95. Under California law, employers must pay employees at least the applicable minimum wage for all hours worked. "Hours worked" include all time during which an employee is subject to the employer's control, including time spent performing mandatory, job-related onboarding and training.

96. At all relevant times, California Labor Code § 1182.12 established the minimum wage that Medical Solutions was required to pay Plaintiffs and members of the California Unpaid Work Class for all hours worked.

97. After Plaintiffs and members of the California Unpaid Work Class were hired and accepted assignments, Medical Solutions required them to complete mandatory onboarding modules, facility-specific trainings, examinations, and related requirements before they were permitted to begin paid work on those assignments.

98. This onboarding and training was mandatory, controlled by Medical Solutions, and directly related to Plaintiffs' and Class members' job duties and

continued employment.

99. Medical Solutions failed to pay Plaintiffs and Class members any wages for time spent completing this required onboarding and training, in violation of California Labor Code § 1197.

100. Pursuant to California Labor Code § 1194, Plaintiffs and members of the California Unpaid Work Class are entitled to recover unpaid minimum wages, interest thereon, liquidated damages pursuant to California Labor Code § 1194.2, and reasonable attorneys' fees, and costs.

**COUNT II**

**Failure to Reimburse Business Expenses**

**(Cal. Lab. Code § 2802)**

(*On behalf of Plaintiffs and the California Expense Reimbursement Class*)

101. Plaintiffs reallege and incorporate by reference all prior paragraphs.

102. California Labor Code § 2802 requires employers to indemnify employees for all necessary expenditures or losses incurred in direct consequence of the discharge of their duties or in obedience to the employer's directions.

103. Plaintiffs and members of the California Expense Reimbursement Class incurred necessary and reasonably foreseeable business expenses in direct consequence of Medical Solutions' assignment requirements, including expenses for travel, lodging, meals, licensing, credentialing, and other mandatory costs.

104. Medical Solutions failed to fully reimburse these necessary business expenses pursuant to uniform policies and practices, in violation of California Labor Code § 2802.

105. Plaintiffs and members of the California Expense Reimbursement Class seek reimbursement of all unreimbursed business expenses, together with interest, attorneys' fees, costs, and all other relief available under California law.

**COUNT III**

**Failure to Pay Daily Overtime Wages**

**(Cal. Lab. Code §§ 510, 511, 1194)**

(*On behalf of Plaintiffs and the California Daily Overtime Class*)

106. Plaintiffs reallege and incorporate by reference all prior paragraphs.

107. California Labor Code § 510 requires that non-exempt employees be paid overtime compensation at one and one-half times their regular rate of pay for all hours worked in excess of eight hours in a workday, and double-time for all hours worked in excess of 12 hours in a workday, unless a lawful alternative workweek schedule has been adopted pursuant to Labor Code § 511.

108. Plaintiffs and members of the California Daily Overtime Class routinely worked shifts exceeding eight hours in a single workday while employed by Medical Solutions in California.

109. Medical Solutions maintained and applied a uniform policy and practice under which it failed to pay daily overtime wages for hours worked in excess of eight in a workday, instead paying straight-time wages for all hours worked up to 12 hours in a day.

110. Medical Solutions did not lawfully adopt an alternative workweek schedule applicable to Plaintiffs or Class members as required by California Labor Code § 511. Plaintiffs and Class members were never provided notice of any proposed alternative workweek schedule, never voted on such a schedule, and never consented to the adoption of any alternative workweek applicable to their assignments.

111. To the extent Medical Solutions attempted to rely on alternative workweek schedules purportedly adopted by the healthcare facilities where Plaintiffs were placed, such reliance is unlawful and ineffective. Plaintiffs were employees of Medical Solutions, not the facilities, and any facility-specific alternative workweek schedules—if they existed at all—did not apply to Plaintiffs' job classifications, work units, or assignments.

112. As a result of Medical Solutions' uniform and unlawful compensation practices, Plaintiffs and members of the California Daily Overtime Class were not paid all daily overtime wages owed for hours worked in excess of eight hours in a workday.

113. Medical Solutions' failure to pay required daily overtime wages violated California Labor Code §§ 510 and 511. Pursuant to § 1194, Plaintiffs and Class members are entitled to recover unpaid overtime wages, interest, attorneys' fees, and costs.

**COUNT IV**

**Failure to Properly Calculate Overtime and Meal and Rest Period Premiums Using the Regular Rate of Compensation**

**(Cal. Lab. Code §§ 510, 226.7, 1194)**

(*On behalf of Plaintiffs and the California Regular Rate Class*)

114. Plaintiffs reallege and incorporate by reference all prior paragraphs.

115. California law requires that overtime wages and meal and rest period premiums be paid based on the employee's regular rate of pay, which must include all non-discretionary remuneration for employment.

116. Medical Solutions paid Plaintiffs and members of the California Regular Rate Class various forms of non-discretionary compensation— including housing stipends, meals-and-incidentals stipends, per diem payments, bonus payments, and call-back pay—but excluded these amounts from the regular rate used to calculate overtime wages and any meal or rest period premium payments.

117. As a result of excluding non-discretionary compensation from the regular rate of pay, Medical Solutions underpaid overtime wages and, to the extent meal or rest period premium payments were owed and paid, underpaid such premium payments by calculating them using an unlawfully depressed regular rate of compensation, in violation of California Labor Code §§ 510 and 226.7, thereby entitling Plaintiffs and Class members to recovery under California Labor Code § 1194. This includes the underpayment of double-time wages, because Medical Solutions calculated double-

time using the same unlawfully depressed regular rate.

118. Plaintiffs and Class members seek recovery of all unpaid overtime wages and meal and rest period premiums, together with interest, attorneys' fees, costs, and all other relief available under California law.

**COUNT V**

**Failure to Provide Accurate Itemized Wage Statements**

**(Cal. Lab. Code § 226)**

(*On behalf of Plaintiffs and the California Wage Statement Class*)

119. Plaintiffs reallege and incorporate by reference all prior paragraphs.

120. California Labor Code § 226(a) requires employers to furnish employees with accurate itemized wage statements showing, among other things, the total hours worked, applicable hourly rates, wages earned at each rate, and all premium compensation owed.

121. Medical Solutions furnished Plaintiffs and members of the California Wage Statement Class with itemized wage statements that were inaccurate and misleading because they failed to reflect the correct regular rate of pay and, as a result, misstated the applicable hourly rates (including overtime and/or double-time rates), the wages earned at each rate, and the premium compensation due.

122. Specifically, Medical Solutions' wage statements failed to accurately reflect wages earned because Medical Solutions excluded non-discretionary compensation—including stipends and per diem payments, non-discretionary loyalty bonuses, and call-back pay—from the regular rate of pay used to calculate overtime wages and meal and rest period premiums.

123. Medical Solutions' wage statements further failed to accurately reflect the total wages earned and overtime compensation owed because Medical Solutions failed to pay required daily overtime wages for hours worked in excess of eight hours in a workday.

124. Medical Solutions' wage statements further failed to accurately reflect

total hours worked because they omitted hours worked for mandatory onboarding and training activities.

125. As a result of these inaccuracies, Plaintiffs and Class members could not determine from their wage statements whether they had been properly compensated for all hours worked, overtime hours worked, or premium wages owed, and therefore suffered injury within the meaning of California Labor Code § 226(e).

126. Medical Solutions' failure to provide accurate itemized wage statements was knowing and intentional, as it resulted from standardized payroll practices and compensation policies applied uniformly to Plaintiffs and Class members.

127. Plaintiffs and members of the California Wage Statement Class are entitled to recover statutory penalties, injunctive relief, interest, attorneys' fees, and costs pursuant to California Labor Code § 226(e) and (g).

**COUNT VI**

**Failure to Timely Pay Wages During Employment**

**(Cal. Lab. Code § 204)**

(*On behalf of Plaintiffs and the California Failure to Timely Pay Wages Class*)

128. Plaintiffs reallege and incorporate by reference all prior paragraphs.

129. California Labor Code § 204 requires employers to pay employees all wages earned and unpaid no later than designated regular paydays during employment.

130. Medical Solutions failed to timely pay Plaintiffs and members of the California Failure to Timely Pay Wages Class all wages earned and due in full on regularly scheduled paydays, including by: (a) paying straight-time wages, rather than the required daily overtime premium, for hours worked in excess of eight hours in a workday and up to 12 hours; (b) calculating overtime wages and/or any meal or rest period premium compensation using a regular rate that unlawfully excluded non-discretionary compensation paid in the same pay period, including stipends or per diem payments, loyalty or similar bonuses, and/or call-back pay; and/or (c) omitting compensable onboarding and training time from paid hours.

131. As a result, Plaintiffs and members of the California Failure to Timely Pay Wages Class are entitled to recover all available relief under California law, including statutory penalties under California Labor Code § 210, interest, attorneys' fees, and costs.

**COUNT VII**

**Waiting Time Penalties**

**(Cal. Lab. Code §§ 201-203)**

(*On behalf of Plaintiffs and the California Waiting Time Penalties Class*)

132. Plaintiffs reallege and incorporate by reference all prior paragraphs.

133. California Labor Code §§ 201 and 202 require that employees receive all earned and unpaid wages immediately upon involuntary termination or within seventy-two (72) hours of voluntary resignation, respectively.

134. Medical Solutions willfully failed to pay Plaintiffs and members of the California Waiting Time Penalties Class all earned and unpaid wages upon separation from employment, including unpaid straight-time wages, unpaid or underpaid daily and weekly overtime wages, unpaid meal and rest period premiums, and unreimbursed business expenses.

135. As a result of Medical Solutions' willful failure to timely pay all wages owed upon separation, Plaintiffs and members of the California Waiting Time Penalties Class are entitled to recover waiting time penalties under California Labor Code § 203, as well as all other available remedies, including unpaid wages, interest, attorneys' fees, and costs.

**COUNT VIII**

**Violation of California's Unfair Competition Law**

**(Cal. Bus. & Prof. Code §§ 17200 *et seq.*)**

(*On behalf of Plaintiffs and the Classes*)

136. Plaintiffs reallege and incorporate by reference all prior paragraphs.

137. California's Unfair Competition Law ("UCL"), Business and Professions

Code §§ 17200 *et seq.*, prohibits any unlawful, unfair, or fraudulent business act or practice.

138. Medical Solutions engaged in unlawful business acts and practices in violation of the UCL by committing the following violations of state and federal law, among others:

a. Failing to pay all wages owed for mandatory post-hire onboarding and training in violation of California Labor Code §§ 1194, 1197, and 1182.12;

b. Failing to reimburse necessary business expenses incurred by employees in violation of California Labor Code § 2802;

c. Failing to pay required daily overtime wages for hours worked in excess of eight hours in a workday in violation of California Labor Code §§ 510 and 511;

d. Failing to pay overtime wages and any meal or rest period premium payments owed under Labor Code § 226.7 at the proper rate by excluding compensation from the regular rate used to calculate the overtime or premium rate, in violation of California Labor Code §§ 510, 226.7, and 1194;

e. Failing to timely pay all wages due upon separation from employment in violation of California Labor Code §§ 201–203;

f. Failing to timely pay all wages earned during employment in violation of California Labor Code § 204;

g. Failing to provide accurate itemized wage statements in violation of California Labor Code § 226; and

h. Failing to pay overtime compensation at the proper regular rate in violation of the FLSA, 29 U.S.C. § 207.

139. Medical Solutions' conduct is also unfair within the meaning of the UCL because it violates established public policies embodied in California and federal wage-

and-hour laws, offends notions of fairness and equity, and confers an unfair competitive advantage on Medical Solutions by allowing it to reduce labor costs through unlawful compensation practices.

140. As a direct and proximate result of Medical Solutions' unlawful and unfair practices, Plaintiffs and Class members suffered economic injury in the form of unpaid wages, unreimbursed business expenses, and other compensation unlawfully withheld.

141. Plaintiffs seek restitution of all wages and other monies unlawfully withheld, injunctive relief requiring Medical Solutions to cease its unlawful compensation and payroll practices and to implement lawful policies going forward, pre- and post-judgment interest, and an award of attorneys' fees and costs to the extent permitted by applicable law.

**COUNT IX**

**Failure to Pay Overtime Wages Under the FLSA**

**(29 U.S.C. § 207)**

(*On behalf of Plaintiff Nwankwo and the FLSA Collective*)

142. Plaintiffs reallege and incorporate by reference all prior paragraphs.

143. At all times material herein, Plaintiff Nwankwo and all others similarly situated have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

144. The FLSA regulates, among other things, the payment of overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 206(a); 29 U.S.C. § 207(a)(1).

145. Medical Solutions is subject to the minimum wage and overtime pay requirements of the FLSA because it is an enterprise engaged in interstate commerce and its employees are engaged in commerce.

146. During all relevant times to this action, Medical Solutions was the "employer" of Plaintiff and all similarly situated employees within the meaning of the

FLSA. 29 U.S.C. § 203(d).

147. During all times relevant to this action, Plaintiff and all similarly situated employees were Medical Solutions' "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

148. Plaintiff and all similarly situated employees are covered, non-exempt employees within the meaning of the FLSA. Accordingly, Plaintiff and all similarly situated employees must be paid overtime in accordance with 29 U.S.C. § 207.

149. Pursuant to the FLSA, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek. 29 U.S.C. § 207(a).

150. Although the FLSA contains some exemptions from the overtime requirements, none apply to Plaintiff or the similarly situated members of the FLSA Collective.

151. Medical Solutions paid Plaintiff and members of the FLSA Collective a base hourly wage and additional payments, including housing stipends, meals-and-incidentals stipends, per diem payments, bonus payments, and call-back pay, but excluded all of those payments from the regular rate used to calculate overtime compensation.

152. As a result of excluding non-discretionary remuneration for their work from the regular rate of pay, Plaintiff and members of the FLSA Collective were paid overtime compensation at rates lower than those required by the FLSA.

153. Medical Solutions' violations of the FLSA were willful and not in good faith. Medical Solutions knew or showed reckless disregard for whether its compensation practices complied with federal law, entitling Plaintiff and members of the FLSA Collective to recover unpaid overtime wages, liquidated damages, and attorneys' fees and costs pursuant to 29 U.S.C. §§ 216(b) and 255(a).

## REQUEST FOR RELIEF

Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that the Court enter judgment in their favor and against Defendant as follows:

A. Certify the proposed Classes under Federal Rule of Civil Procedure 23 and appoint Plaintiffs as Class Representatives and their counsel as Class Counsel;

B. Certify the FLSA Collective under 29 U.S.C. § 216(b) and authorize notice to all similarly situated individuals;

C. Award compensatory damages, including:

   a. unpaid minimum and overtime wages;

   b. unpaid or underpaid premium payments owed under Labor Code § 226.7;

   c. unreimbursed business expenses;

   d. waiting time penalties for untimely payment of wages upon separation pursuant to California Labor Code § 203; and

   e. statutory penalties for failure to timely pay wages during employment, including penalties under California Labor Code § 210;

   f. and statutory penalties for failure to provide accurate itemized wage statements under California Labor Code § 226;

D. Award restitution of all wages and other compensation unlawfully withheld under California's Unfair Competition Law, Business and Professions Code §§ 17200 *et seq.*;

E. Award liquidated damages under the FLSA;

F. Award statutory penalties for failure to provide accurate itemized wage statements pursuant to California Labor Code § 226(e);

G. Award pre-judgment and post-judgment interest on all unpaid wages and reimbursable expenses as permitted by law;

H. Award reasonable attorneys' fees, litigation expenses, and costs pursuant to

applicable state and federal laws, including California Labor Code §§ 218.5, 1194, 226, and 2802, and 29 U.S.C. § 216(b);

I. Grant declaratory relief establishing that Medical Solutions' compensation and payroll practices violated California and federal law;

J. Grant injunctive relief requiring Medical Solutions to bring its compensation, reimbursement, payroll, and wage-statement practices into compliance with California law and the FLSA, including by properly calculating the regular rate of pay and paying all wages and premiums owed; and

K. Award such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all claims so triable.

Dated: January 30, 2026

Respectfully submitted,

*/s/ Eve H. Cervantez*

Eve H. Cervantez (State Bar No. 164709)
Jacqlyn Blatteis (State Bar No. 353335)
**ALTSHULER BERZON LLP**
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
ecervantez@altber.com
jblatteis@altber.com

George A. Hanson*
J. Austin Moore*
Alexander T. Ricke*
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: 816-714-7100
hanson@stuevesiegel.com
moore@stuevesiegel.com
ricke@stuevesiegel.com

* *Pro Hac Vice forthcoming*